UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| TYLER J. SAUCIER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:11-cv-411-NT |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| Defendant ) | |

### REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal presents the questions of whether the administrative law judge was required to adopt certain limitations found by "medical experts" to apply to the plaintiff; whether he sufficiently explained the reasons for his rejection of certain conclusions reached by state-agency reviewing consultants; whether he properly evaluated the plaintiff's claims of adverse side effects of medication; and whether he wrongly concluded that the vocational expert's testimony was consistent with the Dictionary of Occupational Titles. I recommend that the court vacate the commissioner's decision.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on September 12, 2012, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

1

Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff met the insured status requirements for SSD only through June 30, 2009, Finding 1, Record at 12; that he suffered from a history of Crohn's disease with associated anemia, personality disorder/antisocial traits, and a substance addiction disorder, current status unclear, impairments that were severe but which did not, considered separately or in combination, meet or medically equal the criteria of any impairment listed in Appendix 1 to 20 C.F.R. Part 404, Subpart P (the "Listings"), Findings 3-4, *id.* at 12-13; that he retained the residual functional capacity ("RFC") to perform light work, except that he required unscheduled access to a bathroom twice a day in excess of normal breaks, could understand and remember simple to moderately detailed instructions, could execute simple to moderately detailed tasks on a consistent schedule to complete a normal workday and workweek, could not interact with the general public, and could adapt to routine changes in the workplace setting, Finding 5, *id.* at 15; that, given his age (21 on the alleged date of onset of disability), at least a high school education, work experience, and RFC, there were jobs existing in significant numbers in the national economy that the plaintiff could perform, Findings 7-10, *id.* at 18-19; and that, therefore, he had not been under a disability, as that term is defined in the Social Security Act, at any time through the date of the decision, April 18, 2011, Finding 11, *id.* at 20. The Appeals Council declined to review the decision, *id.* at 1-3, making it the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481, *Dupuis v. Secretary of Health & Human Servs.,* 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as

adequate to support the conclusion drawn.  *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work.  20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7.  The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work.  *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

### A.  Omitted Limitations

The plaintiff first faults the administrative law judge for failing to accept his testimony that he would require the use of a bathroom up to eight times a day.  Plaintiff's Statement of Specific Errors ("Itemized Statement") (ECF No. 13) at 2-4.  He offers as support for his position the testimony of Peter Webber, M.D., called by the administrative law judge to testify as a medical expert, that the plaintiff would require bathroom facilities and would have cramps that would "require him probably to stop working temporarily," and that the colonoscopy reports showed a disease process "that could reasonably be expected to result in the symptoms Mr. Saucier testified to in the hearing";[2] the opinion of Dr. Richard Chamberlin, a physician reviewer for the state disability agency that the plaintiff "may require 'ready access to toilet facilities up to once an hour between normal breaks'"; and the "RFC Assessment of Dr. Iver Neilson, [also a state-agency reviewing physician] who found the Claimant's 'Crohn's disease credible' . . . .

---

[2] This testimony is not, as the plaintiff appears to believe, equivalent to testimony that the intensity and frequency of the symptoms reported by the plaintiff could reasonably be expected to result from the physical condition revealed by the colonoscopy reports.

3

'Goes to the bathroom a lot due to Crohn's[]" . . . and that the Claimant "Might require close proximity to bathroom facilities.'" *Id*.

However, none of the cited testimony supports the specific testimony of the plaintiff that he contends the administrative law judge was required to adopt.  Specifically, none of the quoted testimony or report language supports a need for "up to eight" bathroom visits in an eight-hour workday.  None of the cited evidence specifies the number of times per workday that the plaintiff would need to use a bathroom.  Accordingly, and contrary to the plaintiff's argument, the administrative law judge did not reject any medical opinion about the number of times per workday the plaintiff might need to use a bathroom and, therefore, did not need to provide the reasoning supporting such a rejection.

The plaintiff also asserts that the administrative law judge "gave uneven deference to Dr. Webber's opinion, allowing that fatigue limited the claimant, but only to 'light' work, and ignored the obvious implication of Dr. Webber's opinion that the claimant would need what amounted to unpredictable temporary breaks during the workday to address abdominal cramping and other abdominal symptoms."  Itemized Statement at 3-4.

First, Dr. Webber himself testified that the plaintiff "should be able to handle light work." Record at 74.  The administrative law judge also accurately reported Dr. Webber's testimony about bathroom breaks, *compare id.* at 17 *with id.* at 73, and, again, that testimony says nothing about the number of breaks that might be needed.  Dr. Webber clearly did not testify that the plaintiff would be unable to work at all due to his need for bathroom breaks.

Of more substance, however, is the plaintiff's argument that the administrative law judge's limitation to two unscheduled bathroom breaks in addition to regular breaks during a workday is without support in the record.  I emphasize, however, that the administrative law

4

judge did not, as the plaintiff would have it, find that he required "only two unscheduled breaks during an 8-hour workday[.]" Itemized Statement at 4. Rather, the administrative law judge found that the plaintiff "must have unscheduled access to a bathroom twice a day, in excess of his normal breaks[.]" Record at 15. The plaintiff's observation that Maine law provides an employee only with one 30-minute break after six hours of work, Itemized Statement at 3, does not and cannot mean that any employer would forbid its employees from using a bathroom during six straight hours of work. "Normal" breaks" are just that – normal – not "legally required." *See, e.g., Compston v. Astrue*, Civil Action No. 2:10-cv-818, 2011 WL 4360106, at *11 & n.5 (discussing "normal" breaks in light of need for more frequent bathroom breaks). *See also Sousa v. Astrue*, 783 F.Supp.2d 226, 236 n. 1 (D. Mass. 2011) (same).

That being said, the administrative law judge does not cite any evidentiary support for the numerical limitation that he chose:

> [The claimant] argues that his Crohn's disease necessitates eight hourly breaks during a workday, with each break lasting up to 15 minutes, to allow for ready access to a bathroom. However, employment records from Hannaford do not support the need for such excessive breaks (Exhibit 18E). While Crohn's disease may cause significant symptoms of bowel urgency and cramping, the undersigned finds that his subjective complaints are excessive given the evidence of record. Consequently, the two additional breaks provided for in the residual functional capacity are generous.

*Id*. at 16.[3] This omission, and the apparent lack of such specific information in the record, requires remand. *Wolfram v. Commissioner of Soc. Sec. Admin.*, 351 Fed.Appx. 241, 243, 2009 WL 3651558, at **2 (9th Cir. Nov. 5, 2009). *See generally Hunt v. Astrue*, No. 1:10-cv-199-JAW, 2011 WL 1226029, at *5-*6 (D. Me. Mar. 29, 2011).

---

[3] The plaintiff takes issue with the administrative law judge's conclusion about the Hannaford employment records, asserting that the record shows that he took "too many sick days." Itemized Statement at 2. The record does show that criticism of the plaintiff, but it also shows that he was terminated for "unacceptable behavior" toward customers. Record at 305-06, 313, 344. Excessive sick days do not equate to taking excessive bathroom breaks while at work. The administrative law judge's observation about that is correct. There is no mention of bathroom breaks in the employment record.

5

Again, I emphasize what my conclusion does *not* suggest.  The plaintiff asserts that "Dr. Webber's opinion that the claimant would need what amounts to unpredictable temporary breaks during the workday to address abdominal cramping and other abdominal symptoms" means that he could not "execute simple to moderately detailed tasks on a consistent schedule to complete a normal work day."  Itemized Statement at 4.  The plaintiff's conclusion does not follow from his premise, at least in the absence of specific medical evidence to this effect.

I will address the plaintiff's other issues on appeal for the benefit of the parties should the court adopt my recommendation and remand this action.

### B.  Reasons for Rejecting State-Agency Reviewers' Conclusions

The plaintiff asserts that the three jobs identified by the vocational expert as available to the plaintiff in response to the administrative law judge's hypothetical question are in fact not available because they "all require frequent kneeling, crouching, or crawling" and the state-agency physician reviewers, Dr. Chamberlin and Dr. Neilson, limited him to occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling.  *Id*. at 5.  His only complaint, regarding the administrative law judge's rejection of these findings as "unsupported by the objective medical findings," Record at 17, is insufficient under 20 C.F.R. § 404.1527(f)(2).  Itemized Statement at 5-6.

Dr. Nielson limited the plaintiff to occasional climbing of ramps and stairs, stooping, kneeling, crouching, and crawling.  Record at 491.  Dr. Chamberlin agreed, and added occasional balancing.  *Id*. at 579.  However, the job of mail clerk, as described in the Dictionary of Occupational Titles, does not require any climbing, balancing, stooping, kneeling, crouching, or crawling.  Dictionary of Occupational Titles (U.S. Dep't of Labor, 4th ed. Rev. 1991) ("DOT"), § 209.687-026.  The same is true of the job of photocopying machine operator.  DOT § 207.685-

014.  The job of cleaner, housekeeping, requires occasional stooping, kneeling, and crouching, with no climbing, balancing, or crawling, DOT § 323.687-014.  None of the jobs is inconsistent with the specific limitations identified by the plaintiff, and any error by the administrative law judge in failing to discuss fully his reasons for rejecting those limitations is harmless.

### C.  Medication Side Effects

The plaintiff complains that the administrative law judge cited his "failure to follow prescribed treatment, but only with the intention of insinuating willful noncompliance." Itemized Statement at 6.  He admits that he "has a history of going on and off his iron supplement, and experiences worsening symptoms while off it[]" and that deleterious side effects caused by the drug Asacol "lead[s] to periodic noncompliance with that medication as well." *Id*. at 7.  Nevertheless, because no medical opinion in the record "remotely discounts the Claimant's allegation that his iron supplement and Crohn's medication can cause harsh side-effects[,]" he asserts that it was "improper for the ALJ to draw adverse inferences about the Claimant's credibility without employing the correct statutory analysis with respect to evaluating the type, dosage, effectiveness, and side-effects of medications the claimant takes, or has taken, . . . as required under 20 C[.]F[.]R[. §§] 404.1529[ and] 416.929(c)(3)(iv), and SSR 97-7p." *Id.*

The plaintiff cites only two regulations and a Social Security Ruling without a pinpoint citation in support of his argument, and I am aware of no required "statutory analysis" with respect to the side effects of medication.  He does not say how the outcome of his application would necessarily be changed in the absence of this alleged error.  *See Jones v. Astrue*, No. 07-92-B-W, 2008 WL 660181, at *2 (D. Me. Mar. 5, 2008).

7

Even if the plaintiff had presented this argument with this necessary element, the outcome would not change. The administrative law judge said the following about the plaintiff's credibility:

> In assessing the claimant's credibility, the undersigned notes that some of the claimant's treating providers have questioned his ability to relate a reliable medical history, and at times, have questioned his motivation. For example, on August 16, 2007, after being admitted to the hospital after an apparent seizure and drug intoxication, George Conover, M.D. noted that the claimant's accounting of events changed repeatedly (Exhibit 3F, pp. 3-4). On February 21, 2011, the claimant presented to Mark Overton, M.D. (Dr. Overton) complaining that he is "feeling depressed all of the time," noting that he is applying for disability for Crohn's disease and "'anything here,' meaning mental health" (Exhibit 24F, p. 2; see also Exhibit 21F, p. 5). The claimant later remarked to his treating therapist that he felt Dr. Overton had "suspicions of his motivation for treatment" (Exhibit 21F, p. 2). At the same time, his therapist questioned whether his claim that he was not using substances was valid (Exhibit 21F, pp. 2, 5). The claimant's criminal activity and drug use further diminish his credibility (Exhibits 3F, pp. 3-4; 4F, p. 3; 6F, pp. 8, 12; 7F, p. 7; 13F, p. 3; 14F; 15F, pp. 1-2; 21F, p. 2; and 24F, p. 1).
>
> Moreover, the claimant does not follow his prescribed treatment regimen.
>
> * * *
>
> [T]reatment records revealed that the claimant is often noncompliant with [the course of treatment prescribed by Rodney H. Lahren, M.D.] resulting in an exacerbation of his symptoms (Exhibits 2F, pp. 2-5 and 3F, p. 6). For example, in January 2007, he reported that his most recent symptom flare had not resolved and that he was having 5 to 6 loose stools per day (Exhibit 5F, p. 7). However, he also admitted that he was not taking his prescribed Asacol as directed "just because" (Exhibit 5F, p. 7). At the same time, he reported that he was currently taking his iron and did not report any side effects (Exhibit 5F, p. 7). . . . In October 2007, he reported a recent symptom flare with 7 to 10 loose stools per day (Exhibit 5F, p. 3). Again, he admitted to not taking his medication as prescribed (Exhibit 5F, p. 3). . . .
>
> In January 2009, laboratory tests revealed low hemoglobin and hematocrit levels, and the claimant admitted that he was not taking his iron because it was interfering with his Colazal and causing stomach pain (Exhibit 7F, pp. 1, 4, 6).

*Id*. at 16-17.

This excerpt makes clear that the administrative law judge evaluated the plaintiff's credibility on the basis of his failure to take prescribed medications. Moreover, the administrative law judge could certainly add into his evaluation the fact that the plaintiff apparently never asked for substitute medications or delivery mechanisms. Record at 69-72. At times, the plaintiff specifically denied that he was suffering side effects from the prescribed Asacol. *E.g., id.* at 447. When he did report pain from the iron, he was advised to take the prescribed dose "at a different time period than his Colazal." *Id.* at 467.[4] The mixed evidence concerning side effects of the plaintiff's prescribed medications is not enough to invalidate the administrative law judge's evaluation of his credibility.

### D.  Consistency of Vocational Testimony and DOT

The plaintiff's final allegation of reversible error is that the three jobs identified by the vocational expert in response to the administrative law judge's hypothetical question all fail to "accommodate the ALJ's limitation in his RFC of 'must not interact with the general public.'" Itemized Statement at 8-9. Therefore, he asserts, the testimony was not consistent with the DOT, and the administrative law judge was required to obtain an explanation of the inconsistency from the vocational expert, which he failed to do. *Id*.

The plaintiff focuses on single phrases from the DOT's description of each of the three jobs as evidence that each requires public contact. With respect to the job of mail clerk, however, he stretches that language too far. He asserts that the possibility that a person holding such a job may "distribute and collect mail" means that he will necessarily interact with the general public. *Id*. at 9. But, for example, distributing mail to boxes in a post office and

---

[4] Contrary to the plaintiff's assertion for which he cited this page of the record, there is no evidence that "Asacol caused insomnia." The treating professional merely records the plaintiff's report that he had been suffering from insomnia and suggests that it is "related to his shift work." Record at 467.

collecting mail from drop boxes in or near a post office does not require any contact with the public.  A vocational expert has testified in response to a hypothetical question including "no dealing with the public" that this job would be available.  *Taylor v. Astrue*, No. 5:10-CV-263-FL, 2011 WL 1599679, at *4 (E.D.N.C. Mar. 23, 2011).  As this court has repeatedly held, the availability of a single job that meets the criteria of the RFC established by the administrative law judge is sufficient.  *Degenhardt v. Astrue*, No. 1:11-cv-262-JAW, 2012 WL 1077456, at *6 (D. Me. Mar. 29, 2012).

In addition, at least one other court has found that the DOT description of the housekeeping cleaner job does not involve a need for direct public contact.  *Smith v. Astrue*, No. CIV-11-303-F, 2011 WL 6942307, at *2 (W.D. Okla. Dec. 8, 2011).  This authority supports the vocational expert's testimony and suggests that it is not necessarily inconsistent with the DOT.  Any error in this regard was harmless.

## II.  Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **VACATED** and the case remanded for further proceedings consistent with this opinion.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 28th day of September, 2012.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge